## EMERSON *vs.* FISK & AL.

The owner of a township of land entered into a written contract with *A.* and *B.,* in the autumn of 1825, by which they were to cut all the pine timber on a certain tract in it, suitable for boards, which a prudent man would cut; and to transport one fourth part of the logs to a certain place for the owner, as his share ; the other three-fourths to be taken to the same place, sawed, and delivered to the owner; who was to retain his title to the whole till he should be satisfied that his quarter part was of an average quality with the residue ; and till he should be paid thereout all which the others might owe him ;—and if they should fail to take off the timber in the ensuing winter and spring, they agreed to pay him the value of one fourth part of what might remain ; the timber to stand pledged for the performance of this part also ;—and they did not cut the timber till 1827 ; and before it reached its destined place they sold it to third persons, from whose possession the owner instantly replevied it ; the original contractors being largely in his debt.

Hereupon it was *held*—that the owner's lien extended as well to the logs cut after the winter and beyond the bounds mentioned in the contract, as to those cut within them :—

That a license to cut timber on the lands of the grantor is not assignable :—

That the contractors *A.* and *B.* had no authority to sell the logs ; being only bailees for a special purpose ;—and that immediately upon the sale to third persons, their right as bailees terminated, and the owner might replevy the logs.

The 35th of the rules of this Court, respecting notice to produce papers at the trial of a cause, is hereafter to be applied only to cases where the notice was given previous to the commencement of the trial.

THIS was an action of replevin for 500 pine mill-logs, which the plaintiff, in his writ dated *April* 21, 1828, alleged to be his property.

It was tried before *Weston J.* upon the issue of property in the plaintiff.

The defendants claimed the logs under a purchase from *Tobias Michael* and *Hugh Alexander*, of all their interest therein; who, it appeared by the finding of the jury, had cut them principally in the winter of 1827, on a township of land belonging to the plaintiff, under a contract entered into on the 30th day of *November* 1825, and within the tract therein described. By this contract the plaintiff granted to them " permission to enter upon the township numbered two, in the ninth range, and cut and carry away all the pine timber thereon, being suitable for boards, within" the limits of a tract described by metes and bounds; " on the terms and conditions herein after expressed." The residue of the contract was in these words,—" And the said *Tobias* and *Hugh*, on their part, obligate themselves to cut and haul from the premises all the pine timber suitable for sawing into boards, which a prudent man, owning the same, would cut and haul; and transport one fourth part to *Stillwater*, and there deposit safely into a boom for the said *William Emerson*, free of expense to him; the other three fourths of said logs also to be run to *Stillwater*, and there deposited into a boom safely; and the said *Emerson* to retain the sole ownership thereof, until satisfied that the quarter part first named for stumpage to be deposited in the boom is of an average quality with the whole; and until paid all money and debts due to said *Emerson* from said *Tobias* and *Hugh*, or either of them, at that time, for either money, goods, oxen, or any other advances made for them. And it is further agreed by the said *Tobias* and *Hugh*, if they fail to remove from the premises aforesaid all the pine timber as aforesaid the ensuing winter and spring which a prudent man would remove; then the said *Tobias* and *Hugh* agree to pay to said *William Emerson* such sum as is equivalent to one fourth part of the timber remaining, and for which the timber above is also pledged. And the said *Tobias* and *Hugh* are to saw and run to *Bangor* the one fourth of said logs received for stumpage, at the usual rate which may be agreed on; and the other three fourths they are also to run to *Bangor* the ensuing spring. And after the demands before named are paid to

26

said *Emerson*, the boards are to be delivered over to said *Michael* and *Alexander*, which are made from the other three fourths of said logs." This contract was under seal; and was signed only by the plaintiff and *Michael*.

The plaintiff proved the declarations of one of the defendants, that he and his partner had purchased the interest of *Michael* and *Alexander* in the logs in controversy; which was three fourth parts, the other fourth belonging to the plaintiff for his share; that they were cut on the plaintiff's land, under a contract; and were to be delivered at *Stillwater*; that the defendants were to fulfil the obligations of their vendors, to the plaintiff; and that they were ready to do so, by paying to him his part in money or in logs, as he might elect. The logs were forty five miles above *Stillwater*, and on their way to that place, when they were replevied.

The defendants offered testimony tending to show that these logs were cut beyond the limits described in the written contract, and under a parol agreement with an agent of the plaintiff, made at a subsequent time, and similar, in its general features, to the written contract, except that the plaintiff was to have no lien for his fourth part. But this part of the defence was negatived by the finding of the jury.

It further appeared that the logs were floated down the river as early as the state of the water would permit; that at the time of the replevin *Michael* and *Alexander* were indebted to the plaintiff in a sum exceeding six hundred dollars; and that it was the general usage in that part of the country, in cases similar to this, for the owner of the land to retain a lien on the logs, for the security of his fourth part.

Upon the evidence offered, the judge was requested by the defendants to instruct the jury that if the logs were cut within the bounds described in the written contract, the plaintiff had no right to replevy them. But he instructed them that in such case the plaintiff had that right.

The trial of this cause commenced at about three o'clock in the afternoon; and the evidence was closed at eleven in the next morning. At four o'clock on the first day, the counsel for the plaintiff

called on the defendants to produce the bill of sale, which, it appeared, they had taken from their vendors. This not having been done, the counsel for the plaintiff, in his address to the jury, commented on its non-production, as evincing a consciousness of unsoundness in the defence. Such comments were objected to, on the part of the defendants, as a violation of the rule of the court on that subject, no notice to produce the paper having been given previous to the trial. But as the defendants' place of business was within a few rods of the court house, the judge deemed the case to be within the spirit of the rule, if, the paper being the evidence of title in the defendants, it fell within the rule at all ; and permitted the counsel to comment on their refusal to produce it ; at the same time informing the defendants that if they would say that they could not produce the paper forthwith, he would rule otherwise ; and would in the interim afford them time to consult their counsel. But they declined offering the paper.

The verdict being for the plaintiff, the judge, at the request of the defendants, reserved this point of practice, as well as the correctness of his instructions to the jury, for the consideration of the court.

*Allen* and *T. McGaw*, for the defendants, argued that this action would not lie against them, because their possession of the logs was lawful ; the plaintiff, by his own contract, having no right to the possession till they should arrive at *Stillwater* ; and the logs having been replevied on their way thither. *Wyman v. Dorr,* 3 *Greenl.* 183 ; *Ward v. McAuley,* 4 *D. & E.* 489 ; *Gordon v. Harper,* 7 *D. & E.* 9 ; *Smith v. Plummer,* 15 *East,* 489.

And they insisted, as to the other point, that to entitle a party to comment on the non-production of any paper, the notice to produce it must have been given previous to the trial. 1 *Phil. Ev.* 339, 342.

*Gilman* and *Sprague,* for the plaintiff.

Weston J. delivered the opinion of the Court, at the ensuing *July* term in *Waldo.*

The issue submitted to the jury in this case was, whether the logs in controversy were the property of the plaintiff. They were in-

structed by the judge at the trial that if they were satisfied that the timber was cut on the land described in the contract made between the plaintiff and *Tobias Michael* and *Hugh Alexander*, on the thirtieth of *November* 1825, the plaintiff was entitled to their verdict. We are called upon to decide upon the correctness of this instruction. The timber was originally the property of the plaintiff, and must be understood to have continued his, unless he had parted with it. *Michael* and *Alexander* had permission to enter upon the land, to cut the timber, to cause it to be transported to *Stillwater*, there to saw it, and thence to run the boards to *Bangor*. That no question might arise as to whose property the timber, logs and boards were to be considered in their various stages, it was expressly provided that the plaintiff should retain the sole ownership, until satisfied that the fourth part, to be deposited for his special use, was " of an average quality with the whole, and until paid all money and debts due to said *Emerson* from said *Tobias* and *Hugh*, or either of them, at that time, for either money, goods, oxen, or any other advances made for them." It is therefore so far from being true that any change of property in the transit is to be implied from the contract, that it is therein expressly negatived.

It is however insisted that these terms are limited to the timber that should be cut the winter and spring following the date of the contract, and that they do not attach to such as might be cut subsequently; that *Michael* and *Alexander* were the purchasers of the timber, which remained on the land after 1826; and that the logs replevied, having been wholly or principally cut in 1827, cannot be regarded as the property of the plaintiff. They stipulated that they would cut all the pine timber suitable for boards, within the limits specified, which a prudent man would cut from his own land. But for this provision, their interest might have tempted them to cut only that which was most valuable and most accessible. That the plaintiff might be secure upon this point, he required that they should pay for what might remain after the first season, in the same manner as if they had cut the whole; and that he should retain for the fulfilment of this part of the agreement, as much as for his fourth part of what might be actually cut the first season, and for his advances. If these

engagements on their part had actually been complied with in 1826, and the plaintiff had been paid for his whole timber and advances, that which remained on the land might be considered as transferred to them for their separate and proper use. This, although not expressly stipulated, would fairly result from the fact of payment. But payment is not pretended. If by the terms of the contract the plaintiff's right to retain his original title to the timber was restricted to such as might be cut the first season, if they abstained from cutting that season, he would subsequently retain only a personal remedy against them for the timber and advances, upon which it is manifest he did not intend to rely. He clearly guards against such an implication, providing that no part of the property should be held to be theirs, until he was paid and indemnified. Then, and then only, such of the boards as might not be wanted for this purpose, were to be delivered over to them.

But it is urged that if the general property was in the plaintiff, yet if at the time of the replevin he had no right to the possession, his action cannot be maintained ; and that he was not entitled to possession, while the logs were on their way to the place of their destination. It might admit of question whether, if *Michael* and *Alexander* had not sold the logs, the plaintiff might not have taken possession of them in their transit, as he expressly retained the sole ownership to himself. If he had done so to the prejudice of their just expectations under the contract, he would doubtless have been bound to indemnify them for any loss they might have suffered from his interference. But however this may be, we are well satisfied that the agency, authority, or license, given or confided to them by the plaintiff, was not assignable. The plaintiff had a right to appoint his own agents in the management of his property, and they could have no authority to substitute others. If a party license A to cut timber upon his grounds, A has no right to transfer such license to B. The owner may repose a confidence in the one, which he would not extend to the other. The plaintiff was to remain the sole owner. This would seem to take away all pretence even of special property on the part of *Michael* and *Alexander*, leaving them only a charge or oversight of the logs, but entitled by contract to a specific compensation. But

suppose they had a special property ; it could only be as bailees for a special purpose. They clearly had no authority to sell the logs. This would be entirely inconsistent with the rights of the plaintiff as the general owner. By this unauthorized act, the bailment, and their authority under it, was determined. The defendants could derive no rights from the tortious act of *Michael* and *Alexander.* The plaintiff, the original proprietor, chose to retain to himself his right as sole owner, until his demands were satisfied. This right, the defendants having shown no sufficient title against him, has been properly sustained by the verdict.

The rule, which precludes counsel from commenting on the non-production of a paper by the adverse party, unless such party has been notified to produce it before trial, is designed to protect him from any unfavorable inferences to be drawn from his omission to do what he might not know would be expected of him. It is founded also upon the presumption that if seasonable notice had been given to the party, he might have produced the evidence required. As the trial in the case before us consumed part of two days, as the paper in question was within a few rods of the court house, and the defendants were notified to produce it the first day of the trial, which they declined to do, the presiding judge, being of opinion that it was not a case within the reason of the rule, permitted the counsel for the plaintiff to comment on its non-production. Upon consideration we think it better that it should be understood hereafter that the rule will be uniformly enforced according to its terms ; yet under the circumstances of this case we are of opinion that the verdict ought not to be disturbed upon this objection.

*Judgment on the verdict.*

See *Waterston & al. v. Getchell* 5. *Greenl.* 435.